[Civ. No. 3539.   Second Appellate District, Division Two.—June 18, 1921.]

FRED W. FLINT, Jr., Respondent, v. W. J. CONNER, Appellant.

[1] VENDOR AND VENDEE — REPUDIATION OF CONTRACT BY VENDEE — RIGHT OF POSSESSION.—A vendee in possession of land cannot repudiate his contract of purchase and at the same time hold the possession under and by virtue of it. A repudiated contract is no protection to an intending vendee in possession as against the legal title.

[2] ID.—EJECTMENT BY OWNER OF LEGAL TITLE—DEFENSE—EQUITY. When the plaintiff in an action of ejectment is the owner of the legal title to the property, and the defendant relies upon an equitable defense, the latter must, in order to prevent a recovery, make out a complete equitable title and the right of possession thereunder.

[3] ID.—EQUITY—OFFER OF VENDEE TO PERFORM.—In an action of ejectment by the owner of the legal title, the defendant cannot be heard to assert an alleged equity arising out of a contract of purchase until he shall have offered to perform his part of such contract.

---

2. What title or interest will support an action in ejectment, notes, 18 L. R. A. 781; 46 L. R. A. (N. S.) 508.

[4] ID.—OWNERSHIP OF PLAINTIFF—ESTOPPEL.—The defendant in such action having entered into possession of the property, claiming under plaintiff and in subordination to his title, is estopped from questioning plaintiff's ownership of the property.

[5] ID.—IMPROPER JOINDER OF ACTIONS—APPEAL—WAIVER.—The objection that plaintiff improperly joined a cause of action for the recovery of real property with one for the recovery of personalty may not be urged for the first time upon appeal.

[6] APPEAL—SPECIAL ORDER AFTER JUDGMENT—REVIEW OF.—An order denying a motion to recall a writ of execution, being a special order made after judgment, is an appealable order; therefore the objection that such motion was improperly denied may not be considered on an appeal from the judgment.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Howard Prowse for Appellant.

Donald Barker and Wm. H. Neblett for Respondent.

FINLAYSON, P. J.—This is an action to recover possession of a lot of land, with the dwelling-house thereon, and certain personal property, consisting of household furniture. From a judgment in favor of plaintiff, defendant appeals.

Plaintiff and defendant entered into an oral agreement whereby the former agreed to sell and the latter agreed to buy the property, real and personal, for the sum of $17,250. Pursuant to such oral agreement, plaintiff and wife signed two instruments, one purporting to be a deed to the lot and the other a bill of sale of the personal property. Neither instrument named any grantee or purchaser. On June 4, 1919, plaintiff delivered the instruments to the Title Insurance and Trust Company of Los Angeles as escrow-holder, at the same time filing written escrow instructions authorizing the escrow-holder to deliver both instruments "to parties in interest or their representatives, upon payment to you, within twenty days from date hereof, for my account, the sum of $17,250." On July 2, 1919, the following, over

4. Estoppel of vendee in possession to question vendor's title, notes, Ann. Cas. 1912C, 404; 21 L. R. A. (N. S.) 399.

plaintiff's signature, was written at the bottom of the original escrow instructions: "The time limit of this escrow is hereby extended to & including July 17, 1919." No grantee or purchaser is described by name in the escrow instructions. The only words in the writings signed by plaintiff to which resort might possibly be had to identify the intended grantee or purchaser are the words of the escrow instructions, "parties in interest or their representatives." We have serious doubt as to the sufficiency of these words to meet the requirements of the statute of frauds. In order to ascertain who are the "parties in interest," it would be necessary to receive oral evidence as to which there might be a possible conflict. In *Potter* v. *Duffield,* L. R. 18 Eq. 4, the master of the rolls, speaking of a memorandum that described the seller as "vendor," said: "If you could go into evidence as to the person who is described as 'vendor,' the answer would be that Polly was that person. *But that is exactly what the Act says shall not be decided by parol evidence."* However, it is not necessary for us to decide whether, in the instant case, there was a valid contract under the statute of frauds. For if, as we shall assume, the writings do satisfy all the requirements of the statute, nevertheless, for reasons presently to be given, defendant is not entitled to withhold possession from plaintiff.

Shortly after the oral agreement to sell, plaintiff caused the key to the premises to be delivered to defendant, who thereupon entered into possession. Defendant testified that during the oral negotiations he asked plaintiff for immediate possession and that plaintiff agreed thereto. Plaintiff's version of what was said during the negotiations leaves it doubtful whether the delivery of possession to defendant prior to payment of the purchase price was regarded by either as any part of the consideration moving from plaintiff to defendant for the agreed purchase money. But, be that as it may, we think that, for reasons to be stated, plaintiff was entitled to recover the property even if the contract did give defendant the right of possession prior to the time when the deed was to be delivered to him upon payment of the purchase price.

According to the testimony adduced by plaintiff, defendant promised unconditionally to pay the $17,250 within twenty days from June 4, 1919, and nothing was said about

the source whence defendant should obtain the money. Defendant, on the other hand, testified that he told plaintiff that he had, or expected to have, some money in escrow with the Title Insurance and Trust Company, and that from that source he would get the purchase money for the lot and furniture and thus pay plaintiff. He testified that he told the escrow-holder's agent, a Mr. Geller, in plaintiff's presence, that ''I am paying a certain amount of money, $17,250, which was to be paid out of funds coming under my control in this escrow''—referring to an escrow to which plaintiff was not a party. It thus will appear that, according to defendant's theory of the case, his only obligation was to pay the purchase price out of a particular fund, namely, the money that he expected would come under his control in a certain escrow, and which thus would be available for the payment of the purchase money. According to the uncontradicted evidence of Geller, no fund was ever in escrow available for the payment of the purchase money. Geller, who handled the escrow as an employee of the Title Insurance and Trust Company, testified: ''There were never any moneys deposited with the Title Insurance and Trust Company in connection with this escrow which were paid over to Mr. Flint or to his account, nor were there any funds available in this escrow for that purpose.'' Plaintiff has never received from defendant a *sou marqué*, or any consideration of any kind whatever.

On September 2, 1919, which was two weeks prior to the commencement of the action, plaintiff served on defendant a written notice and demand, whereby he notified defendant that, by reason of the latter's failure to comply with the conditions of the contract, plaintiff had withdrawn the instructions from escrow; that defendant's opportunity to acquire title to the property by compliance with the conditions of the escrow instructions had long since been forfeited; and that, by the withdrawal of the escrow instructions, plaintiff had terminated whatever rights defendant might have had to pay the purchase price of the property and acquire title thereto. By this same instrument, plaintiff demanded that defendant quit and deliver up the possession of the property, and notified defendant that if he failed to do so within three days, action would be commenced to recover possession.

Appellant, though he has paid no part of the agreed purchase price, and doubtless never will be able to pay it from the source which he claims was to be the sole source whence he was to acquire the money, nevertheless claims the right to remain in possession of respondent's property. His position really is that, under his view of the contract, he may indefinitely keep possession of the property while refusing to make payment of the purchase money. It would be a woful injustice if he could do this, and we do not think the law sanctions such a result. Appellant's theory seems to be substantially this: The contract gives him the right of possession pending the time when the purchase money should be paid and the deed delivered; time was not made of the essence of the contract; therefore a mere failure to pay the purchase price when due does not entitle his vendor to a recovery of possession. The authorities are not agreed as to whether a mere failure to pay, without notice to quit or demand of possession, will sustain the action. (See *Browning* v. *Estes,* 3 Tex. 462, [49 Am. Dec. 760].) It is, however, thoroughly established in the jurisdictions where a notice to quit is necessary that a failure to pay within a reasonable time after such notice entitles the vendor to sue for the recovery of possession. In *Fears* v. *Merrill,* 9 Ark. 559, [50 Am. Dec. 226], the court said that "a vendor who executes a bond for title to his vendee upon the payment of the purchase money at a future day, and puts him in possession, may, if the money is not paid when due, by first giving to the vendee reasonable notice to quit, avoid his contract and maintain an action of ejectment for the land."

But it is not necessary to decide the case upon the theory that there has been a mere failure to pay the purchase money, and appellant errs when he assumes that he has done no more than merely fail to pay the purchase money as and when it fell due. If, as testified by respondent, as found by the court and as indicated by respondent's written escrow instructions, appellant's contract was an unconditional agreement to pay the full amount of $17,250 within twenty days from June 4, 1919, or within the subsequently granted extension of time to July 17, 1919, then, instead of merely failing to pay, appellant has *refused* to pay. For the evidence shows that, though importuned to pay the purchase price after the expiration of the time granted by re-

spondent in his escrow instructions, appellant refused to do so save out of a phantom fund that never has assumed form or shape and which he must have known ever will be a thing of unsubstantiality. **[1]** In short, appellant, as shown by his answer, as well as by the evidence in the case, has utterly repudiated the oral agreement which respondent testified was the contract that was entered into and which the court found was the contract actually made by the parties. ''A vendee in possession of land cannot repudiate his contract of purchase and at the same time hold the possession under and by virtue of it. A repudiated contract is no protection to an intending vendee in possession against the legal title.'' (*Hicks* v. *Lovell,* 64 Cal. 18, [49 Am. Rep. 679, 27 Pac. 942]. See, also *Gaven* v. *Hagen,* 15 Cal. 208; *Stratton* v. *California Land etc. Co.,* 86 Cal. 364, [24 Pac. 1065]; *Gates* v. *McLean,* 70 Cal. 49, [11 Pac. 489]; *Crane* v. *Ferrier etc. Co.,* 164 Cal. 678; [130 Pac. 429]; *Gervaise* v. *Brookins,* 156 Cal. 106, 107, [103 Pac. 329]; *Burnett* v. *Caldwell,* 9 Wall. (U. S.) 290, [19 L. Ed. 712, see, also, Rose's U. S. Notes].)

If the contract were as testified to by appellant, the result would be the same; for it is apparent from the testimony given by the witness Geller that there is no likelihood that any money will ever be in escrow available for payment of the purchase price of respondent's property. If Geller's testimony be believed (and in support of the judgment we must assume that the trial court accepted it as true), then there has been a total failure of consideration, and respondent, therefore, was entitled to rescind his contract to sell. This he did when he served the written demand and notice on appellant two weeks before commencing the action.

**[2]** When the plaintiff in an action of ejectment is the owner of the legal title to the property, and the defendant relies upon an equitable defense, he must, in order to prevent a recovery, make out a complete equitable title and the right of possession thereunder. (*Wallace* v. *Maples,* 79 Cal. 433, [21 Pac. 860].) Appellant has not alleged compliance with the terms of the contract which the court found was the one made by the parties, nor even a willingness to perform the stipulations of that contract. **[3]** If, contrary to the assumption that we are indulging for the pur-

poses of this decision, the contract be void under the statute of frauds, it is possible, nevertheless, that, having been put in possession of the land, equity would have granted appellant a specific performance had he filed a suitable cross-complaint. But he has neither averred a tender of the purchase money nor offered to pay it. The legal title is in respondent, and appellant's defense is an alleged equity arising out of a contract to purchase. In no event can he be heard to assert this defense until he shall have offered to perform. In *Hicks* v. *Lovell, supra,* the court says: "One who applies to a court of equity to defend him against the legal title to the land of which he is in possession must do equity by paying the price which he agreed to pay." Not only has appellant not offered to perform, but he even affects to rely upon circumstances which, he claims, have relieved him from any obligation to perform, unless it be at the end of some indefinite duration of time and upon the happening of an uncertain and improbable event which, according to the terms of the contract as found by the court, was never within the contemplation of the parties, or, at any rate, was never contemplated by respondent. Thus does appellant hope to place himself in the grossly inequitable position of claiming both the land and the price. Courts will not countenance a position at once so gross and so at variance with fair dealing.

[4] There is no merit in appellant's contention that the finding that respondent is the owner of the property is not supported by the evidence. Having entered into possession, claiming under respondent and in subordination to his title, appellant is estopped from questioning respondent's ownership. In *Hoen* v. *Simmons,* 1 Cal. 119, [52 Am. Dec. 291], an action by the vendor of land against the vendee for possession, the court says: "The defendants having entered into possession, claiming under the plaintiff and in subordination to his title, are estopped from questioning it." (See *Gervaise* v. *Brookins, supra.*)

[5] It is claimed that the complaint improperly joins a cause of action for the recovery of real property with one for the recovery of personalty. It is too late to urge that objection. An objection that several causes of action have been improperly united, or are not separately stated, is ground for demurrer (Code Civ. Proc., sec. 430, subd. 5);

and if the complaint appears to be demurrable upon this ground, and no objection be taken by demurrer, the objection is waived (sec. 434).

[6] It is urged that the lower court improperly denied appellant's motion to recall the writ of execution. The order complained of, a special order made after judgment, was an appealable order. (Code Civ. Proc., sec. 963, subd. 2.) No appeal has been taken from that order. This court, therefore, is without jurisdiction to consider the objection.

Judgment affirmed.

Works, J., and Craig, J., concurred.